Good morning, Your Honors. May it please the Court, my name is Chi Dinh. I'm here with my co-counsel, Mr. Farsad. We represent the appellant plaintiff, Ms. Narvasa. We request three minutes for rebuttal. Okay, I'll try and help you. Watch the clock. It counts down. Your Honor, in this case, Ms. Narvasa submitted a loan modification while she was in default. When she applied for a loan modification, U.S. B. denied her loan modification. When counsel requested the NPV value calculation, which is required under the Homeowner's Bill of Rights, U.S. B. refused. That's California law. That's correct, Your Honor. They refused. Does the National Bank Act require that? No, Your Honor. So in this particular case... That's correct, Your Honor. Why doesn't preemption apply? It doesn't apply because there's no national banking laws that affects foreclosure, and foreclosure has historically been a state's police power. As I understand your argument, though, doesn't it require us to interpret the word making of loans to be limited to the issuance of the original loan, but not any subsequent modification or refinancing of a loan? Isn't that your position? Our position is that the loan modification occurs during the foreclosure process. So the process of the word making... Counsel, listen to my question, and if you can, please answer my question. Is your position that the making of a loan, which is clearly covered by the National Banking Act as an express power of a nationally chartered bank, does that include the making of modifications or refinancing of the loan down the road? It's just a yes or no answer, and then you can explain your answer. Your Honor, because you add the word modification or refinancing, you know, in a sense it's yes, it relates to refinancing, but no, it does not relate to loan modification, Your Honor. The question is, does it relate to making of a loan? And I'm having a hard time understanding why, if a bank goes through the underwriting process in determining the risk of making a loan to a worthy borrower, it doesn't also do exactly the same thing when the borrower subsequently comes back and asks for a modification or a refinancing of that loan. Isn't it exactly the same thing to undertake an assessment of the risk of extending further credit or changing the terms of credit? And why isn't that a regulated activity that Federal law controls on, as opposed to California law? Well, Your Honor, our point is the word make relates to the original creation of the loan originally, but our position is that it's the loan modifications that occurs during the foreclosure, so it's more modified. Yes, in a general sense, Your Honor, yes, there's a point where they're making and modifying the loan, but our position is that because the process of origination already occurred, now we're asking is the modification of that existing loan. We're here on the pleadings, right? This is a Rule 12 dismissal. Yes, sir. So we have to look at the pleadings and not outside the pleadings, correct? That's correct, Your Honor. Correct. Where in the pleadings does it show that the bank in question denied modification based on net present value? Yes, Your Honor, it's in the complaint. We did that on the first page of the introduction. You attached a letter from the bank to the complaint, right? Yes, Your Honor. And all that letter says is, we're not going to disclose that information. Yes, Your Honor. It doesn't say, yes, you're correct, we denied your modification based on our calculation of NPV, correct? Yes. But the thing is that subsequently after that letter, Ms. Navarza's counsel contacted you. That's outside the pleadings, counsel. What you're about to describe is outside the pleadings. This is Rule 12. Yes, Your Honor. You look at the pleadings, that's it, right? We did play that in our complaint, Your Honor. Here's my problem with that argument. You do plead that in the complaint. You say that the loan modification was denied based on NPV, but there's no corresponding factual support. There's no allegations of who did what to make that denial. There's no communication from the bank to you or your client that denial was made on NPV. And it's fine for you to allege that, but unless you're also to allege, hey, the real reason for the denial was false and the bank actually denied on NPV or discovery in such and such a form shows that, or I should say factual matters in such and such a form shows that, then it's a matter of you simply stating something for which there's no factual support. And that is why I understand the judge denied or, excuse me, dismissed the complaint. That's my problem with this whole case, is it seems like you've just made a bold statement without anything to make it plausible. Martinez-Tamayo, Jr.: Your Honor, actually, we did state that who the counsel talked to is Ms. Grady. During that discussion, we explicitly asked, the counsel explicitly asked why the loan was rejected, and the statement was that, okay, it was based on the NPV calculations. Kennedy, Jr.: No, nobody said that. Martinez-Tamayo, Jr.: I believe it is in the complaint yard. Kennedy, Jr.: Where? Martinez-Tamayo, Jr.: On page 239, Your Honor, the introduction at the end, plaintiff contacted defense to ask the calculations and was told defense did not need to provide any of the  Judge Goldberg, Jr.: That still doesn't say that her loan modification was denied on the grounds that it doesn't value. Martinez-Tamayo, Jr.: Okay, well, the defense loan modification did not provide the net public calculation used as required under California State Code 2923.6. Further, plaintiff contacted the counsel. Judge Goldberg, Jr.: But I want to go back to the question I asked you earlier, because if the answer to my question is yes, that the making or arranging of loans includes the servicing or extending of credit, then by definition, federal law and the FDIC regulations attach, and that would preempt California law, which purports to add additional requirements that the federal regulators have not imposed on national banks. So we don't even get to the question of, that we're talking about here, of whether or not there were communications or conversations about MPVs. Martinez-Tamayo, Jr.: Your Honor, even though in your scenario, it does occur like that way, nonetheless, states could still regulate federal lending, provided that there's not significant burdens in the lending's activities. In this particular case, Judge Goldberg, Jr.: I thought the bank basically pointed us to regulations that say that this sort of internal bank underwriting, I'll call them internal computations, are not disclosable. Isn't there a federal regulation that says that? Martinez-Tamayo, Jr.: No, Your Honor. As far as I know, with respect to Section 34.4, disclosure is what they say is that state cannot limit, regulate that particular area, limits the disclosures that are regulated by the OCS. Alito, Jr.: Isn't that what California, this California statute purports to do? Martinez-Tamayo, Jr.: No, Your Honor. Actually, it does not. Because what happened, California foreclosure statute says notice. This is the case, we are arguing the point that there is a distinction between disclosure and notice. And because California specifically understood that disclosure involves doing the initial origination of the loan, so process, that they want to use a word to distinguish disclosure. In this case, notice relates to after the fact, the loan has been disclosed. Alito, Jr.: But isn't the notice, the determination by the bank that your request for loan modification is denied, isn't that the notice? Martinez-Tamayo, Jr.: Yes, but within that notice under Section 23.6, it requires that if that notice is based on the reasons why, you have to provide the reasons why. In this case, if the reason was based on the NPV calculations, they are supposed to provide those calculations. So what happens is when the lenders look, when we apply for a loan application, it takes about six months for an individual to basically collect all this information. They want pay stubs, they want income and all that stuff. There's basically 42-something factors that's involved in this. After that, they go to the underwriter. The underwriter takes another six months to a year, and they really do detailed calculations of whether this particular individual should be entitled to a loan mod or not. Alito, Jr.: Okay, but is that now a disclosure or is that a notice? It sounds to me like a disclosure requirement, not a notice requirement. Martinez-Tamayo, Jr.: Yes, Your Honor, but in Agaio, the court specifically made that distinction because it's no longer in the process of originating the original loan. This is after the fact, that after they have reviewed the loan. Alito, Jr.: Well, unless you accept my earlier question that the making of a loan also includes within the definition of making loans, the servicing and modification of that loan. Martinez-Tamayo, Jr.: Yes, Your Honor, I think one of the cases I cited, it says they distinguish servicing different from the making as well. But with respect to the make modification, I think that distinction is because we are more tailoring during the modification that occurs in the foreclosure. Because what happens is, Your Honor, banks generally don't give loan modification. It only occurs when the homeowners are in default. They have no incentives. Alito, Jr.: But isn't the underwriting process the same? I mean, underwriting is just a fancy financing term for assessing risk. It's the same thing that insurance companies do in trying to decide whether or not they're going to issue you a policy of insurance and what premium they're going to charge you. And I don't see how it differs whether you're considering the original loan to this borrower or the borrower comes back two and a half years later and says, I need to modify or renegotiate the terms of my loan. The underwriting process is the same, is it not? Martinez-Tamayo, Jr.: Yes, Your Honor. Alito, Jr.: Or for the borrower, it's aggravated by the fact that the borrower is now in default on the terms of the original note. So from the bank's standpoint, this is now a riskier loan than it was when the loan was originated. But it's still an underwriting process. Martinez-Tamayo, Jr.: You're right in a general sense, but in a more specific sense, it's not. Because here, right, the underwriting, the process may be the same, but the result is different, right? In one particular case, you're looking at the creating of the original loan and the forming of a contract with the homeowner. In here, we're not asking for a expiration of the terms. It's not the same in the sense of origination. Alito, Jr.: But doesn't that simply amount to an amendment of the original loan contract? Isn't that what the borrower is asking for? Martinez-Tamayo, Jr.: Your Honor, yes. It is an amendment, but it's not origination, Your Honor. Alito, Jr.: Why doesn't that constitute the making of loans within the meaning of the federal banking law? Martinez-Tamayo, Jr.: Well, from what I understand, because the making is the origination of loans. So it's doing the initial process when the lenders and the homeowner are in contact and  Alito, Jr.: So you think that any subsequent amendment or modification of the loan is no longer the making of a loan? Martinez-Tamayo, Jr.: That would depend on the circumstance, but in— Alito, Jr.: In this circumstance? Martinez-Tamayo, Jr.: Yes, because it was in the foreclosure, Your Honor. Alito, Jr.: Okay. You wanted to save some time, and you've now got a minute and 45 seconds. Martinez-Tamayo, Jr.: Okay. Thank you, Your Honor. Alito, Jr.: All right. Thank you, Mr. Pin. Robert McWhorter, Jr.: Good morning, Your Honors. Robert McWhorter—may it please the Court—Robert McWhorter and my colleague, Jared Osborne-Rivas, on behalf of U.S. Bank.  McWhorter, Jr.: Why isn't—to pick up on your opponent's ending, why isn't the making of a loan limited to simply the origination? It would seem logically that when you make a loan, you originate it and create it, and if you modify it, that's something different. McWhorter, Jr.: Well, I think there's—I think there's three or four answers to that. So let's first look at to the word—the language itself. The word make means to cause, to exist, to appear, comes from an idea. In fact, we cited this in our brief. The word make actually, from its root word, came from the idea of repairing a legal document. And to make a loan modification, you are required to have—you're making documents. You're making a document. You're creating an amendment, which must be in writing under Civil Code Section 1624. If you're going to have a modification, it has to be in writing. And so you are, in making a loan, you are making an amendment. That's number one. Number two, if you look at the general purpose, if you look at the purpose of the National Bank Act and the regulations that are adopted, it is clear that the—that Congress intended to regulate the real estate lending activities and its associated activities, and you can see that in a couple places. One is 12 U.S.C. 371, which identifies the fact that real estate lending is a banking business. And then if you look at 12 CFR 34.1, the whole purpose of the OCC regulations for the real estate section is to set standards for real estate-related lending and associated activities. Loan modification certainly is an associated activity with real estate lending. It's done all the time. And then third, Your Honor, if you look at the reality of the substance of the transaction, counsel for appellant said, well, what do you do for a loan modification application? You submit financial information. You submit an application. It goes to underwriting, and then there is some—an agreement that's reached. That's exactly the same process that has gone for a loan origination. And as Your Honor pointed out, it's even more riskier once the loan—you're going through a loan modification because the loan is now a troubled loan. There's nothing in the statutory history that would suggest that Congress intended to somehow differentiate loan modification and loan origination. Counsel for appellant doesn't cite anything for that authority. And it contradicts the whole power—the idea of the National Bank Act, which was to have—a national bank is deemed an instrumentality of the federal government. It is something that was created right after the Civil War so that we'd have national standards for banking and that federal law would control. So in terms of making real estate loans, I think it falls squarely within that. But I'd like to go to the first, the threshold issue that I think that Your Honor has pointed out to, in that we don't even get to the preemption issue. So the complaint in paragraph 15, as Your Honor has pointed out, the denial letter, and it's attached as Exhibit 1. Paragraph 15 simply says that the denial was based on a conclusion, a bald conclusion, that it was denied based on NPV failure, and then attaches Exhibit 1, which is a seven-page letter dated October 5, 2015. It sets forth all of the reasons. The word, net present value, that phrase, is nowhere to be found in that document. It doesn't mention it. It doesn't mention NPV failure. But I get the sense that what Mr. Dinn was arguing was that he alleged properly that the denial was based on a calculation of NPV, and he read language from the complaint that seemed to support a position that the bank, even though not in that letter, provided that is the reason for the denial, and so to dismiss on the basis which you're arguing, which is that that allegation is implausible, was premature and erroneous. Well, on that point... I mean, he properly alleged that NPV calculations were the reason for the denial. Now, there's no evidence for that, but as Judge Hawkins says, we're at the 12B stage here, right? Well, I don't think he properly pled it for a couple of reasons, and I disagree with that he made a request for the NPV, that that was the basis for the denial. Let me take him in pieces for a second. First, let's address his contacting. That's in paragraph 12 of the complaint. Paragraph 12 of the complaint states, October 26, 2015, plaintiffs through his counsel's office contacted the defendant to discuss the denial letter. Plaintiff requested a copy of the NPV calculations in order to decide whether or not to file a formal appeal. In response to this request, defendant stated that they did not need to provide any NPV calculations used. The defendant then told that the law required that they provide NPV calculations, the denial was based on NPV failure. Now, it doesn't say that they told him that it was based on NPV failure. All it says is that he asked for it, and they said that they don't provide it. If you look at 2923.6F3, it conditions disclosure of the monthly gross income and the property value used to calculate the net present value only when the denial of the first lien loan modification is, quote, the result of a net present value calculation. In this case, the net present value calculation is done under the direction of HAMP, which is a Federal program, and it requires that you do a net present value calculation. If you look at the loan modification, the denial letter, there are two reasons given for the denial of the HAMP loan modification. One is that U.S. Bank was unable to create an affordable monthly payment amount without altering Navarro's account beyond program limitations, and two, modified principal and interest payments would exceed the targeted principal and interest payment per program guidelines. But what I want to know is, look, she alleges, Ms. Narvasa, that she was notified that the application had been denied based on an NPV failure. That may or may not be true, but you can't just go to district court and say, that's not true, so dismiss the complaint. You have to say, we're going to discover facts that indicate that's not true and then move for summary judgment under Rule 56, right? Your Honors, there is ample case law that says that you can't have a bold conclusion that contradicts documents attached to the complaint. All right. I agree. All right. Okay. Okay. So you're relying on the letter. Paragraph 11. In the absence of the NPV analysis in the letter. Well, the statement that you're referring to is Paragraph 11 that specifically says that they received notification, and it says a true and correct copy of that letter is attached as Exhibit 1. So it's basing that statement on the letter. So the bold allegation contradicts the fact. And he doesn't say the bank officers, agents, and employees spoke with each other and misled the lender in the letter or anything like that. Exactly. There's nothing there. All right. And so he's stuck with the complaint as pled. All right. Let's talk about this notice-disclosure difference for a second that he raised during his oral argument. And he relies upon Aguayo and tries to cut this distinction between notice and disclosure. Your Honor, I think I would analogize notice and disclosure somewhat like peanut butter and jelly, and they go together. And you can have notice and disclosure. So the requirement, 2923.6, requires that a notice be sent. And you have to give notice that there was a denial. But the reason why there was a denial, and specifically the calculations used and the net present value, is basically the why. It is the disclosure. And so if you look at the definition of disclosure that Aguayo used, it says the act of disclosing or exposing something that had been kept secret. Black Law's Dictionary defines disclosure as the act or process of making known something that was previously unknown, a revelation of facts. Here, the revelation of the fact is the calculations used for the net present value. It's not something that the appellant would have known or could have known. It's something that U.S. Bank had under its underwriting process. The notice is, as Aguayo indicated, is a notification or communication of a fact, claim, demand, or proceeding. So, again, the notice is being sent, but it contains a disclosure. Now, Aguayo, there is a – the Court said, well, in that case, it was a notice. It wasn't a disclosure. And I want to make something perfectly clear on why Aguayo is not this case. Aguayo had to do with a UCC notice, a notification of disposition under the Uniform Commercial Code. And that is purely a notice. It's a statutory notice under UCC-9613. In fact, if you look at – if Your Honors pulled the UCC, there's actually a form notification that's set out, and it simply gives you the date of the foreclosure sale, that type of thing. In Aguayo, they knew that the car had been repossessed. It wasn't a fact they didn't know it had been repossessed. All they were given was the date of the foreclosure sale. That was the notice. That is completely different than disclosures of underwriting variables or underwriting processes that this net present value calculation requires. So it clearly falls within the scope of that – of disclosure as under 34.4a)(9, disclosure falls within the – is something that's specifically preempted. But if we look beyond 34 – 34.4a)(9, I think, Your Honors, we can go even a step further, because if we look at the statute, it says a national bank may make real estate loans under 12 U.S.C. 371 and 34.3 without regard to State law limitations concerning, and then 9 says disclosure. But there's another clause that goes on after that that I think is also applicable. It says, including laws requiring specific statements, information, or other content to be included in credit-related documents. I'm paraphrasing. This is a credit-related document they're asking for. The decision to make a loan modification is a credit-based decision. As we discussed, you submit tax – you submit assets and liabilities and financial information, and the calculation itself that the underwriting is doing is, by definition, a credit-based decision, because the net present value, what that calculation says is it's an analysis of whether the better – the bank is better off in foreclosing or is it better off doing a loan modification. That's what that calculation is – that's the purpose of that calculation. What's the remedy, then, for a borrower or a homeowner, mortgage customer, who wants a loan modification, doesn't receive it, and feels very strongly or might even have some evidence that the bank lied about the reason for the denial? Well, they have appellate rights under the – No, I'm not talking about here. I'm talking about just anyone who encounters this situation. I mean, do you have to go to state court or you shut out of federal court or how – you know? Well, if you're lying, if you're – The bank. If you're using the word lying, I mean, that's a – Conspiring, lying, misleading, you know. Banks are subject to generally applicable laws, and so there's case law that establishes that if you lie, if there's a fraudulent conduct, then there's remedies because banks can't commit fraud. I mean, they can't. They're subject to those generally applicable laws.  Well, look. You're a good lawyer. Let's – I don't really think this is all that important to get through, but my question is, obviously, how does a dissatisfied borrower get into federal court to remedy rights for a denial of a modification when the reason that she was given for it is at odds with what she understands to be the truth? Well, not to educate my opposing counsel on claims, but there are federal statutes that provide remedies for borrowers that they can assert themselves under. If the court wants me to go through them, I can, but there are specific federal statutes that they can avail themselves of that govern national banks, and they could assert federal remedies, as they've done all the time. That's not what we have here. He's sued under a state court claim. All right. Well, that's my question, because it seems to me that a broad rule is not what we need here. We need to look at what happened in this particular denial. Correct? Correct. All right. I only have about 20 seconds left, so I would just say this, that this case has to be looked in the context of what the National Bank Act is, and under 12 U.S.C. 12, I'm sorry, 24, Congress intended to give banks, national banks, powers and incidental powers, enumerated powers and incidental powers, and certainly the making of real estate loans under Section 371, the making of real estate loans, which, by the way, 371 just doesn't limit it to making it, it says arranging and et cetera, et cetera, on real estate loans, and that's what this case falls within. This is something that falls within the ambit of the federal government. Thank you, Your Honors. Okay. Thank you very much. Your Honor, I'd like to make several points. First of all, if we were not to distinguish between foreclosure and notice, that would affect all of California's notice of default and notice of trustee sale. So if you are to— I thought the question was not between foreclosure and notice, but between notice and disclosure. Yes, Your Honor. So if you were to combine the notice as part of disclosure, right, and California has been regulating the foreclosure process, they sent notice of default, notice of trustee sales. So is it your position that California law requires the bank to disclose all of the details of its underwriting in assessing the creditworthiness of the borrower? Your Honor, first of all, it's not disclosure in a sense because I don't want to keep using that word because that is an issue here. The second point— Well, let me ask the question without using the word then. Is it your position that California law requires the bank to reveal all the details of its internal deliberations in making the decision to deny the modification? Is that your position? No, Your Honor. No, Your Honor. Just tell me. What our position is that it provides just the reasons why they were denied for. Didn't they? If you look at the denied letter— Do you know exactly why they denied your client's modification request? Judge Hockman, yes, but no, because what happened, they give you, for example, in the denied letter, they say, oh, your income was insufficient, but then they give you the reason, the income that was used. We don't have no value indicating why the income was insufficient, what income was used to deny the— Didn't your client provide additional credit information to the bank at the time that they sought the loan modification, including what their current employment was and how much money they were being paid every month? Yes, yes, Tommy, but what happened is the records get still after 60 days, so you have to keep refiling your pay stubs, your income and all that stuff. So in that particular sense, we don't know which income the lender was using. So that's why we ask for those stuff, and we need more specific details so we know whether to appeal or not. In this case, we were unable to because they didn't give us the information. Okay. I think we have your argument in mind, and you have run out of time, so you're 43, 44, 45 seconds over now. Okay, Your Honor. I just want to make a conclusion. All right. You can make one concluding point. In this case, Ms. LaVarza just want the court to uphold Aguayo and reverse its victories court so that she could have a fair loan modification application, Your Honor. Okay. Thank you very much, counsel. The case just argued is submitted. We'll take a 10-minute recess and then come back to your argument in the last case on
judges: Hawkins, Tallman, Murphy